UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 98-7256-CIV-MOORE

Magistrate Judge O'Sullivan

JANNERAL DENSON and JORDAN L. TAYLOR,
a minor, through his legal guardian,
JANNERAL DENSON,

        Plaintiffs,

v.



UNITED STATES OF AMERICA and its TREASURY
DEPARTMENT and CUSTOMS SERVICE; VINCE PRIORE,
individually and in his official capacity
as the former United States Customs Service's Port Director;
LEE LAVENKA, DENNIS FLYNN, CHERYL FRIEDLAND,
individually and in their official capacities
as United States Customs Inspectors;
PUBLIC HEALTH TRUST OF DADE COUNTY, FLORIDA
d/b/a JACKSON MEMORIAL HOSPITAL; IRA CLARK, individually
and in his official capacity as President/Director of
JACKSON MEMORIAL HOSPITAL; JOHN BENNETT, M.D., ALEXANDER AMADIO,
M.D., JOSE HERNANDEZ, M.D., RICARDO PRESAS, M.D.,
MAURIZIO SEPE, M.D., LYNN P. CARMICHAEL, M.D. and GERALD H.
KRAFT, M.D., individually and in their official capacities as
Doctors employed by JACKSON MEMORIAL HOSPITAL;
ILEANA HOLLANT, MARIE PROSPERE, KENNETH
REYNAULD, GARY THOMPSON, DOREEN SIMMONS,and GRETCHEN BETLEM,
individually and in their official capacities
as Nurses employed by JACKSON MEMORIAL HOSPITAL,

        Defendants.
_____/

### SECOND AMENDED COMPLAINT

The Plaintiffs, JANNERAL DENSON and JORDAN L. TAYLOR,

through their undersigned counsel, sue Defendants, jointly and

severally, and allege:



## JURISDICTION

1.   This is an action for damages arising out of one or more violations of State and Federal law detailed below.

2.   This action is brought pursuant to the Federal Tort Claims Act, 42 U.S.C. §1983, §1985, §1988 and the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §1331, §1343, §1346(b), 42 U.S.C. §1988 and the Constitutional provisions mentioned above.

3.   The acts and practices constituting the violations alleged below have occurred within the jurisdiction of the United States District Court in and for the Southern District of Florida.  Venue is properly within this District under 28 U.S.C. §1402(b), as Plaintiffs reside in Palm Beach County, Florida.  In connection with the acts, practices and violations alleged below, each Defendant has, directly or indirectly, violated the Plaintiffs' constitutional rights.

4.   Furthermore, additional pendent claims under the laws of the State of Florida are brought for assault and battery and medical negligence.

5.   On January 14, 1998, an Administrative Claim was submitted by the Plaintiffs to the United States Customs Service. More than six months have passed and the agency has not resolved the claim.

6.    On November 2, 1998, all conditions precedent under Florida law to the filing of the pendent claims have been satisfied. (Exhibit A and B).

7.    Each Plaintiff seeks an award for damages for permanent physical, mental and emotional injuries, loss of earning capacity, loss of enjoyment of life, punitive damages, court costs and attorney fees.

## PARTIES

8.    The Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR, a minor, at all times material hereto, are United States citizens residing in Palm Beach County, State of Florida.

9.    The UNITED STATES OF AMERICA is the appropriate Defendant under the Federal Tort Claims Act.   The United States Customs Service ("CUSTOMS") is, and at all times mentioned herein was an agency of Defendant UNITED STATES OF AMERICA's Department of Treasury.   At all times material to this Complaint, agents of United States Customs Service, responsible for the acts and omissions alleged herein, were acting within the scope of their employment.

10.    Defendant VINCE PRIORE served as the United States Customs Service's Port Director for Fort Lauderdale International Airport during times relevant to the events described in this complaint and he is being sued in his official and individual

3

capacity.

11.  Defendants DENNIS FLYNN, CHERYL FRIEDLAND, and LEE LAVENKA, at all times duly mentioned herein, were duly appointed and acting United States Customs Inspectors, employed by and serving under Defendants VINCE PRIORE and UNITED STATES OF AMERICA, and are sued in their official and individual capacities.

12.  Defendant PUBLIC HEALTH TRUST OF DADE COUNTY, FLORIDA d/b/a JACKSON MEMORIAL HOSPITAL (hereinafter referred to as JACKSON MEMORIAL HOSPITAL) is a hospital licensed to operate and control health care facilities and employ health care practitioners, including doctors and nurses, in the State of Florida, and held itself out to the public as capable of undertaking medical care and treatment.  Said Defendant provided medical and other professional services under contract with Defendant UNITED STATES OF AMERICA.  (Exhibit C).

13.  IRA CLARK is the President/Director of JACKSON MEMORIAL HOSPITAL.  He is responsible as President/Director for enforcing the regulations of Defendant JACKSON MEMORIAL HOSPITAL, and for ensuring that his employees, servants and agents obey the laws of the State of Florida and the United States and he is being sued in his official and individual capacity.

14.  Defendants JOHN BENNETT, M.D., ALEXANDER AMADIO, M.D., RICARDO PRESAS, M.D., MAURIZIO SEPE, M.D., JOSE HERNANDEZ, M.D.,

4

GERALD H. KRATZ, M.D., and LYNN P. CARMICHAEL, M.D., at all times mentioned herein, were duly appointed Doctors employed by and serving under Defendants IRA CLARK and JACKSON MEMORIAL HOSPITAL and are sued in their official and individual capacities.

15.    Defendants ILEANA HOLLANT, MARIE PROSPERE, KENNETH REYNAULD, GARY THOMPSON, DOREEN SIMMONS, and GRETCHEN BETLEM, at all times mentioned herein, were duly appointed Nurses employed by and serving under Defendants IRA CLARK and JACKSON MEMORIAL HOSPITAL and are sued in their official and individual capacities.

16.    At all times material hereto, and in all their acts described herein, Defendants were acting under color of state and federal law and color of their authority as public officials and public employees.

**ALLEGATIONS OF FACT**

17.    On or about May 10, 1990, a contract was entered into between Defendant PUBLIC HEALTH TRUST OF DADE COUNTY, FLORIDA d/b/a JACKSON MEMORIAL HOSPITAL (hereinafter referred to as JACKSON MEMORIAL HOSPITAL) and United States Customs Service, on behalf of the Defendant UNITED STATES OF AMERICA, for the purpose of providing medical care to persons suspected of smuggling contraband inside their body cavities, and, thereby, said Defendant was acting as an agent of the Defendant UNITED STATES

OF AMERICA.   (Exhibit C).

18.   Said contract was renewed for the time period from October 1, 1995 through September 30, 1998.   The Defendant JACKSON MEMORIAL HOSPITAL guaranteed the performance of medical services by members of the staff of JACKSON MEMORIAL HOSPITAL at a rate not to exceed $2,500.00 per individual.   (Id.).

19.   On or about February 14, 1997, the Plaintiff JANNERAL DENSON, an African American, was a passenger on Air Jamaica Airlines flight #087, arriving in Fort Lauderdale from Jamaica.

20.   At approximately 2:10 p.m., the Plaintiff left the airplane and walked to the United States Customs area.   Having gone through the passenger check, she was leaving the Customs area when she was detained by the Defendant CHERYL FRIEDLAND, a United States Customs Inspector.

21.   At that time, Defendant CHERYL FRIEDLAND inquired as to the purpose of the Plaintiff's visit to Jamaica.

22.   The Plaintiff informed said Defendant that she had gone to Jamaica to visit with her husband and to try to resolve various immigration matters concerning his move to the United States.

23.   In support of this statement, the Plaintiff showed the immigration documents to Defendant CHERYL FRIEDLAND.

24.   At that time, the Defendant CHERYL FRIEDLAND stated that she wished to search the Plaintiff's luggage.

6

25.   The Plaintiff gave consent for the search.

26.   No contraband was found in the Plaintiff's luggage.

27.   After her luggage was searched, the Plaintiff attempted to leave the United States Customs area.

28.   At that time, the Plaintiff was taken to the Customs search room.  While waiting there, she asked to go to the bathroom.  At that time the Plaintiff JANNERAL DENSON was taken to the bathroom  where she was patted down by Defendant FRIEDLAND.  Additionally, her clothing, undergarments and panty liner were examined by Defendant FRIEDLAND, as well as the toilet paper she used and the toilet bowl.  Present during this examination was Customs Inspector Linda Banks.  No contraband was found.

29.  Shortly thereafter, the Plaintiff JANNERAL DENSON was informed by Defendant CHERYL FRIEDLAND that she was not free to leave and that she was being taken to Jackson Memorial Hospital by Inspectors Banks, Smith and Defendant FRIEDLAND of United States Customs Service.

30.   At that time, the Plaintiff JANNERAL DENSON requested that she be allowed to contact her mother and an attorney.

31.   Said request was denied by Defendant CHERYL FRIEDLAND.

32.   Defendant FRIEDLAND handcuffed the hands of the Plaintiff behind her back, and only after being told by Inspector Banks that it would be more appropriate to handcuff the obviously

pregnant Plaintiff in the front did Defendant FRIEDLAND move the handcuffs to the front.

33.  The Plaintiff JANNERAL DENSON was transported against her will, and in handcuffs, to JACKSON MEMORIAL HOSPITAL.

34.  Despite having no criminal history, and no contraband in her luggage or on her person, said transport was authorized by supervisory Customs Inspectors, Defendants LEE LAVENKA and/or DENNIS FLYNN.  Neither supervisory Inspector was present at the Fort Lauderdale Airport when the Plaintiff was being questioned and physically examined by Defendant FRIEDLAND.

35.  Despite having no criminal history, and no contraband in her luggage or on her person, Defendant CHERYL FRIEDLAND told hospital personnel of Defendant JACKSON MEMORIAL HOSPITAL to examine the Plaintiff for suspected ingestion of a controlled substance.

36.  The Plaintiff JANNERAL DENSON was initially taken in handcuffs to the OB/GYN ER ward of JACKSON MEMORIAL HOSPITAL where Dr. Megan Koh examined her internally and confirmed to Defendant FRIEDLAND and Inspector Smith, of the obvious pregnant state of the Plaintiff.

37.  Additionally, Dr. Koh informed Defendant FRIEDLAND that said pregnancy was a high risk pregnancy due to a marginal placenta previa.

38.  Dr. Koh further informed said Defendant that the

8

examination showed no presence of any contraband drugs, only the presence of a twenty-eight week old fetus, Plaintiff JORDAN L. TAYLOR.

38.   Despite this knowledge, Defendant FRIEDLAND took the Plaintiff JANNERAL DENSON to Ward D of JACKSON MEMORIAL HOSPITAL for further detention and examination.

39.   Said detention and examination was authorized by supervisory Customs Inspector, Defendant LAVENKA.

40.   Defendant LAVENKA authorized the detention and examination despite never going to the hospital to speak with the Plaintiff JANNERAL DENSON, despite never speaking with any hospital personnel concerning the appropriateness of further examination of the Plaintiff JANNERAL DENSON, and despite the fact that he had been contacted by Customs Inspector Banks, an inspector with a lengthy experience, who informed him that the detention of the Plaintiff should cease and that she should be returned to the Fort Lauderdale Airport.

41.   Notwithstanding Defendants LAVENKA and FLYNN's personal responsibility to ensure that there was a valid legal basis to continue holding the Plaintiff JANNERAL DENSON against her will, they failed to adequately inform themselves of the facts and failed to promptly order her release from custody.

42.   Defendant VINCE PRIORE, as the United States Customs Service's Port Director of Fort Lauderdale Airport, had a duty to

9

properly train, supervise and/or discipline United States Customs Inspectors under his control.

43. Defendant PRIORE's failure to properly train, supervise and administer the agency's drug interdiction program at the Fort Lauderdale Airport was a proximate cause of the deprivation of rights suffered by the Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR.

44. Except for a few hours, the Plaintiff JANNERAL DENSON remained handcuffed to a bed throughout her stay at Jackson Memorial Hospital.

45. At no time during her stay at Jackson Memorial Hospital was the Plaintiff allowed to contact her family or an attorney.

46. Defendants JACKSON MEMORIAL HOSPITAL, IRA CLARK, JOHN BENNETT, M.D., ALEXANDER AMADIO, M.D., RICARDO PRESAS, M.D., MAURIZIO SEPE, M.D., JOSE HERNANDEZ, M.D., GERALD H. KRATZ, M.D., LYNN P. CARMICHAEL, M.D. ILEANA HOLLANT, MARIE PROSPERE, KENNETH REYNAULD, GARY THOMPSON, DOREEN SIMMONS, and GRETCHEN BETLEM, had a sworn duty to appropriately treat the Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR.

47. At the time that the Plaintiff was taken to Ward D of Jackson Memorial Hospital, the Plaintiff was informed by Defendant FRIEDLAND, that she would not be allowed to leave until she took the prescription laxative "Go-Lytely" and other medication, and, underwent examinations provided by Defendants

10

JOHN BENNETT, M.D., ALEXANDER AMADIO, M.D., RICARDO PRESAS, M.D., MAURIZIO SEPE, M.D., and JOSE HERNANDEZ, M.D., and produced three clear stool samples.

48.  In fact, Defendants JOHN BENNETT, M.D., ALEXANDER AMADIO, M.D., RICARDO PRESAS, M.D., MAURIZIO SEPE, M.D., JOSE HERNANDEZ, M.D., ILEANA HOLLANT, MARIE PROSPERE, KENNETH REYNAULD, GARY THOMPSON, and DOREEN SIMMONS, were fully aware that the treatment they had prescribed for Plaintiff JANNERAL DENSON was contra to appropriate medical treatment of women who were pregnant.

49.  The prescribed treatment was done despite the knowledge that **no** evidence existed that the Plaintiff JANNERAL DENSON had ingested any contraband drugs and that such treatment could endanger the lives of Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR.

50.  The prescribed treatment and examinations in Ward D of Jackson Memorial Hospital was done despite the fact that the Plaintiff JANNERAL DENSON had refused on at least two occasions to sign a consent form for treatment.  (Exhibit D and E).

51.  The prescribed treatment and examinations by Defendants JOHN BENNETT, M.D., ALEXANDER AMADIO, M.D., RICARDO PRESAS, M.D., MAURIZIO SEPE, M.D., JOSE HERNANDEZ, M.D., ILEANA HOLLANT, MARIE PROSPERE, KENNETH REYNAULD, GARY THOMPSON, and DOREEN SIMMONS was done against the will of the Plaintiff JANNERAL DENSON and

11

amounted to an assault on her and battery against her and her
unborn child, Plaintiff JORDAN L. TAYLOR.

52.  Said prescribed treatment included, but was not limited
to, prescribing a bowel cleanser, Go-Lytely, prescribing an
improper diet and other improper medication, ignoring complaints
of abdominal pain and bloody urine and failing to monitor the
fetus, Plaintiff JORDAN L. TAYLOR.

53.  Defendants JOHN BENNETT, M.D., ALEXANDER AMADIO, M.D.,
RICARDO PRESAS, M.D., MAURIZIO SEPE, M.D., JOSE HERNANDEZ, M.D.,
ILEANA HOLLANT, MARIE PROSPERE, KENNETH REYNAULD, GARY THOMPSON,
and DOREEN SIMMONS actively participated in the detention and
illegal search and seizure of the Plaintiff JANNERAL DENSON and
continued to improperly treat the Plaintiff when no just cause
existed for said treatment.

54.  Defendants JOHN BENNETT, M.D., ALEXANDER AMADIO, M.D.,
RICARDO PRESAS, M.D., MAURIZIO SEPE, M.D., JOSE HERNANDEZ, M.D.,
ILEANA HOLLANT, MARIE PROSPERE, KENNETH REYNAULD, GARY THOMPSON,
and DOREEN SIMMONS, in their quest of illegally searching the
Plaintiff JANNERAL DENSON, intentionally ignored their medical
training and ignored the medical findings of Dr. Koh.

55.  Defendants GRETCHEN BETLEM, GERALD H. KRAFT, M.D., and
LYNN D. CARMICHAEL had a duty to supervise and control Defendants
JOHN BENNETT, M.D., ALEXANDER AMADIO, M.D., RICARDO PRESAS, M.D.,
MAURIZIO SEPE, M.D., JOSE HERNANDEZ, M.D., ILEANA HOLLANT, MARIE

12

PROSPERE, KENNETH REYNAULD, GARY THOMPSON, and DOREEN SIMMONS in their medical treatment of persons brought to Ward D.

56.   Defendants BETLEM, KRAFT and CARMICHAEL failure to properly supervise and control said Defendants was a proximate cause of the deprivation of the rights suffered by the Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR.

57.   The Plaintiff JANNERAL DENSON refused to take the prescription bowel cleanser, Go-Lytely, informing Defendant FRIEDLAND that she was afraid that said treatment would harm her child, Plaintiff JORDAN L. TAYLOR.

58.   The Plaintiff was informed that she would not be allowed to leave until she took the medication and treatment and provided three clear stool samples.

59.   The next day, still handcuffed, the Plaintiff JANNERAL DENSON, out of fear and failing in her attempt to produce the necessary stool samples without medication and treatment, and not being allowed to contact her family or an attorney, took medication provided by Defendants JOHN BENNETT, M.D., ALEXANDER AMADIO, M.D., MAURIZIO SEPE, M.D., and JOSE HERNANDEZ, M.D..

60.   On February 16, 1997, after having taken the prescribed bowel cleanser, Go-Lytley, and producing three clear stool samples, the Plaintiff JANNERAL DENSON was discharged by Defendant PRESAS.   In discharging the Plaintiff, Defendant PRESAS ignored the condition of the Plaintiff JANNERAL DENSON, i.e.

severe cramps, diarrhea, and bloody urine, and ignored the
condition of the fetus, Plaintiff JORDAN L. TAYLOR.

61.   Following the medical discharge by Defendant PRESAS,
the Plaintiff continued to be detained an additional four hours
until she was taken by Defendant FRIEDLAND to Fort Lauderdale
Airport.

62.   No contraband drugs had been found in the Plaintiff
JANNERAL DENSON's luggage, on her person, or in her person.

63.   No criminal charges were ever instituted against the
Plaintiff JANNERAL DENSON.

64.   Despite finding no contraband drugs, Defendants
FRIEDLAND, LAVENKA or FLYNN neither apologized nor attempted to
assist the Plaintiff once she was brought to Fort Lauderdale
Airport.

65.   From the time of her discharge from Jackson Memorial
Hospital until the time of the emergency caesarian, the Plaintiff
continued to suffer from cramps, diarrhea and bleeding.

66.   As a result of the cramps, diarrhea and bleeding,
within two days of her discharge from Jackson Memorial Hospital,
the Plaintiff was taken by her parents to Bethesda Memorial
Hospital.

67.   Ten days later, on February 28, 1997, the Plaintiff
prematurely gave birth to Plaintiff JORDAN L. TAYLOR by an
emergency caesarian operation.

14

68.   The Plaintiff JORDAN L. TAYLOR remained in intensive care at Bethesda Hospital in West Palm Beach until approximately March 30, 1997.

69.   To date, the Plaintiff JORDAN L. TAYLOR continues to suffer from various defects as a direct result of the premature birth, which, in turn, was the result of the conduct of the Defendants.

70.   The warrantless detention, searches, handcuffing, forced medication and improper treatment of the Plaintiffs were undertaken without legal basis, and these actions were in violation of the laws of the State of Florida, and the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

71.   The actions of the Defendants FRIEDLAND, LAVENKA and FLYNN, United States Customs Inspectors, were taken because of the race and ethnicity of the Plaintiffs, in violation of the laws of the State of Florida and the Fourth and Fifth Amendments to the United States Constitution.

72.   The wrongful actions of the Defendants FRIEDLAND, LAVENKA, FLYNN, and PRIORE, constitute false arrest, assault, battery, false imprisonment, intentional infliction of emotional distress, unlawful search and seizure and unlawful invasion of privacy, under the laws of the State of Florida.

73.   Defendant VINCE PRIORE, as the Port Director, had a

15

duty to train, supervise, control or otherwise ensure that Defendants FRIEDLAND, LAVENKA and FLYNN did not violate the constitutional rights of persons such as the Plaintiffs.

74.   Defendant VINCE PRIORE abdicated his policymaking and oversight responsibilities, thereby allowing the incident involving the Plaintiffs to occur.

75.   The wrongful actions of the Defendants JOHN BENNETT, M.D., ALEXANDER AMADIO, M.D., RICARDO PRESAS, M.D., MAURIZIO SEPE, M.D., JOSE HERNANDEZ, M.D., ILEANA HOLLANT, MARIE PROSPERE, KENNETH REYNAULD, GARY THOMPSON, DOREEN SIMMONS, GRETCHEN BETLEM, GERALD H. KRAFT, M.D., LYNN D. CARMICHAEL, M.D., IRA CLARK and JACKSON MEMORIAL HOSPITAL constitute, assault, battery, false imprisonment, intentional infliction of emotional distress, unlawful search and seizure, unlawful invasion of privacy, and medical negligence under the laws of the State of Florida.

76.   The wrongful actions of the Defendants JOHN BENNETT, M.D., ALEXANDER AMADIO, M.D., RICARDO PRESAS, M.D., MAURIZIO SEPE, M.D., JOSE HERNANDEZ, M.D., ILEANA HOLLANT, MARIE PROSPERE, KENNETH REYNAULD, GARY THOMPSON, DOREEN SIMMONS, GRETCHEN BETLEM, GERALD H. KRAFT, M.D., LYNN D. CARMICHAEL, M.D., IRA CLARK and JACKSON MEMORIAL HOSPITAL in providing improper medical care to Plaintiff JANNERAL DENSON and, thereby causing injury to the Plaintiffs, was deliberately indifferent to the serious medical needs of the Plaintiffs, and in violation of the Fifth, Eighth

and Fourteenth Amendments to the United States Constitution.

77.  Defendant IRA CLARK had a duty to supervise, control or otherwise ensure that Defendants JOHN BENNETT, M.D., ALEXANDER AMADIO, M.D., RICARDO PRESAS, M.D., MAURIZIO SEPE, M.D., JOSE HERNANDEZ, M.D., ILEANA HOLLANT, MARIE PROSPERE, KENNETH REYNAULD, GARY THOMPSON, DOREEN SIMMONS, GRETCHEN BETLEM, GERALD H. KRAFT, M.D., LYNN D. CARMICHAEL, M.D., IRA CLARK and JACKSON MEMORIAL HOSPITAL provided appropriate medical care to all persons entering Jackson Memorial Hospital.

78.  Defendant IRA CLARK abdicated his policymaking and oversight responsibilities, thereby allowing the incident involving the Plaintiffs to occur.

79.  At all times herein mentioned, Defendants, and each of them, authorized and ratified the wrongful acts of the other individual Defendants and were willful participants in the joint activity that deprived the Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR of their federal constitutional rights and rights under Florida law.

80.  The above acts and omissions of Defendants, and each of them, constitute a course of conduct and failure to act amounting to deliberate indifference to the rights, health, safety and welfare of Plaintiffs and those similarly situated, resulting in the deprivation of the Plaintiffs' constitutional rights under state and federal law.

17

81.   As a direct and proximate result of the acts of the Defendants, the Plaintiff JANNERAL DENSON has suffered the following injuries and damages:

a.   Violation of her constitutional rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure of her person;

b.   Loss of earning capacity;

c.   Loss of her physical liberty;

d.   Permanent physical and emotional injuries, humiliation and embarrassment, and damage to her reputation, all of which continue to this day and are likely to continue into the future, and which require the expenditure of money for treatment;

82.   As a direct and proximate result of the acts of the Defendants, the Plaintiff JORDAN L. TAYLOR, a viable fetus at the time of the incident, has suffered the following injuries and damages:

a.   Violation of his constitutional rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure of his person;

b.   Loss of earning capacity;

c.   Loss of his physical liberty;

d.   Permanent physical and emotional injuries,

18

humiliation and embarrassment and damage to his reputation, all of which continue to this day and are likely to continue into the future, and which require the expenditure of money for treatment.

### COUNT I.
### CLAIM AGAINST DEFENDANTS HOLLANT, PROSPERE, REYNAULD, THOMPSON, SIMMONS, BENNETT, AMADIO, PRESAS, SEPE, HERNANDEZ, BETLEM, KRAFT, CARMICHAEL AND CLARK
### ASSAULT AND BATTERY

83.   The Plaintiffs reallege paragraphs 1 through 82.

84.   As a direct result of the above-described wrongful acts of Defendants ILEANA HOLLANT, MARIE PROSPERE, KENNETH REYNAULD, GARY THOMPSON, DOREEN SIMMONS, JOHN BENNETT, M.D., ALEXANDER AMADIO, M.D., RICARDO PRESAS, M.D., MAURIZIO SEPE, M.D., JOSE HERNANDEZ, M.D., and the injuries caused thereby, as alleged above, the Plaintiffs suffered severe physical injuries which necessitated them having to be admitted to a hospital in Palm Beach County, Florida.

85.   In committing the assault and battery on the Plaintiffs, the Defendants ILEANA HOLLANT, MARIE PROSPERE, KENNETH REYNAULD, GARY THOMPSON, DOREEN SIMMONS, JOHN BENNETT, M.D., ALEXANDER AMADIO, M.D., RICARDO PRESAS, M.D., MAURIZIO SEPE, M.D., JOSE HERNANDEZ, M.D. acted brutally, willfully, maliciously and without any excuse or justification.  The Defendants callously and recklessly by their actions disregarded

the Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR's safety and
continued life.

86.  The assault and battery on the Plaintiffs was due to
insufficient training and supervision of Defendants BETLEM,
CARMICHAEL, KRAFT and CLARK and the intentional, willful and
malicious conduct of said Defendants.

**WHEREFORE,** the Plaintiffs demand compensatory and punitive
damages against Defendants HOLLANT, PROSPERE, REYNAULD, THOMPSON,
SIMMONS, BENNETT, AMADIO, PRESAS, SEPE, HERNANDEZ, BETLEM, KRAFT,
CARMICHAEL and CLARK, attorney fees, costs and trial by jury for
all issues so triable by right.

<u>COUNT II</u>

<u>CLAIM AGAINST DEFENDANTS HOLLANT, PROSPERE, REYNAULD,
THOMPSON, SIMMONS, BENNETT, AMADIO, PRESAS, SEPE, HERNANDEZ,
BETLEM, KRAFT, CARMICHAEL AND CLARK
MEDICAL NEGLIGENCE</u>

87.  The Plaintiffs reallege paragraphs 1 through 86.

88.  At all times material hereto, while at JACKSON MEMORIAL
HOSPITAL, Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR, a
viable fetus, came under the care and treatment of Defendants
HOLLANT, PROSPERE, REYNAULD, THOMPSON, SIMMONS, BENNETT, AMADIO,
PRESAS, SEPE, HERNANDEZ, BETLEM, KRAFT, CARMICHAEL, and CLARK,
agents of Defendant JACKSON MEMORIAL HOSPITAL, who were acting in
the course and scope of their employment with said Defendant.

20

89.   Defendants HOLLANT, PROSPERE, REYNAULD, THOMPSON, SIMMONS, BENNETT, AMADIO, PRESAS, SEPE, HERNANDEZ, BETLEM, KRAFT, CARMICHAEL and CLARK had a duty to the Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR, to treat, care for, and otherwise provide appropriate medical care for said patients, in accordance with accepted standards of care for similar health care providers, in Dade County, Florida, or any other similar medical community.

90.   Notwithstanding said duty, said Defendants breached said duty and did fall below standards of care in Dade County, Florida, or any other similar community.

91.   As a direct and proximate result of the aforementioned acts of negligence of said Defendants, Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR have sustained severe physical, mental, and emotional injuries, loss of earning capacity, and loss of enjoyment of life.

**WHEREFORE**, Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR, a minor, demand compensatory damages against Defendants HOLLANT, PROSPERE, REYNAULD, THOMPSON, SIMMONS, BENNETT, AMADIO, PRESAS, SEPE, HERNANDEZ, BETLEM, KRAFT, CARMICHAEL and CLARK, costs, and trial by jury for all other issues so triable by right.

### COUNT III

### CLAIM AGAINST DEFENDANT JACKSON MEMORIAL HOSPITAL MEDICAL NEGLIGENCE

92.   The Plaintiffs reallege paragraphs 1 through 91.

21

93.   At all times material hereto, while at JACKSON MEMORIAL HOSPITAL, Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR, a viable fetus, came under the care and treatment of the agents, employees, residents, interns, faculty, staff, nurses, and other related medical personnel of JACKSON MEMORIAL HOSPITAL, who were acting within the course and scope of their employment or agency.

94.   At all times material hereto, the agents, employees, residents, interns, faculty, staff, nurses, and other related medical personnel of Defendant JACKSON MEMORIAL HOSPITAL, had a duty to the Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR, to treat, care for, and otherwise provide appropriate medical care for them in accordance with accepted standards of care for similar health care providers.

95.   Notwithstanding said undertaking, the Defendant JACKSON MEMORIAL HOSPITAL, by and through its agents, employees, residents, interns, faculty, staff physicians, attending physicians, including but not limited to, Defendants HOLLANT, PROSPERE, REYNAULD, THOMPSON, SIMMONS, BENNETT, AMADIO, PRESAS, SEPE, HERNANDEZ, BETLEM, KRAFT, CARMICHAEL, breached said duty and did fall below standards of care in Dade County, Florida, or any other similar community.

96.   As a direct and proximate result of the aforementioned acts of negligence of Defendant JACKSON MEMORIAL HOSPITAL, Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR have sustained

22

severe physical, mental, and emotional injuries, loss of earning
capacity, and loss of enjoyment of life.

**WHEREFORE**, Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR,
a minor, demand compensatory damages from Defendant JACKSON
MEMORIAL HOSPITAL, costs, and trial by jury for all other issues
so triable by right.

### COUNT IV

### CLAIM AGAINST JACKSON MEMORIAL HOSPITAL
### APPARENT AGENCY

97.   The Plaintiffs reallege paragraphs 1 through 96.

98.   At all times material hereto, Defendants HOLLANT,
PROSPERE, REYNAULD, THOMPSON, SIMMONS, BENNETT, AMADIO, PRESAS,
SEPE, HERNANDEZ, BETLEM, KRAFT, CARMICHAEL, and other hospital
personnel, were under the control and domination, actual or
implied, of the Defendant JACKSON MEMORIAL HOSPITAL, and were
held out to the public as being the agents or employees of the
Defendant corporation possessing requisite authority on which
Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR relied, to their
detriment, and the Defendant JACKSON MEMORIAL HOSPITAL is,
therefore, estopped from denying the agency relationship and is
vicariously liable for the acts of negligence of the Defendants
and other hospital personnel.

**WHEREFORE**, Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR, a minor, demand compensatory damages from Defendant JACKSON MEMORIAL HOSPITAL, costs, and trial by jury for all other issues so triable by right.

**COUNT V**

**CLAIM AGAINST JACKSON MEMORIAL HOSPITAL
NON-DELEGABLE DUTY**

99.  The Plaintiffs reallege paragraphs 1 through 98.

100.  At all times material hereto, Defendant JACKSON MEMORIAL HOSPITAL had a non-delegable duty to the Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR, a viable fetus, to provide appropriate medical treatment.

101. Defendant JACKSON MEMORIAL HOSPITAL undertook a duty to treat the Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR for a charge, and furnished the doctors and staff to render that treatment.

102. Defendant JACKSON MEMORIAL HOSPITAL employed or paid the personnel staffing the hospital including, but not limited to, Defendants HOLLANT, PROSPERE, REYNAULD, THOMPSON, SIMMONS, BENNETT, AMADIO, PRESAS, SEPE, HERNANDEZ, BETLEM, KRAFT, CARMICHAEL, to perform said duties.

103. The duties assumed and/or imposed upon Defendant JACKSON MEMORIAL HOSPITAL are non-delegable, and, as a matter of law, impose vicarious liability upon the Defendant JACKSON MEMORIAL HOSPITAL, for the negligent performance of such duties

24

by the Defendants.

104.   As a direct and proximate result of the negligence of
the Defendants as described above, for which the Defendant
JACKSON MEMORIAL HOSPITAL is vicariously liable, Plaintiffs have
sustained severe physical, mental, and emotional injuries, loss
of earning capacity, and loss of enjoyment of life.


**WHEREFORE**, Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR,
a minor, demand compensatory damages from Defendant JACKSON
MEMORIAL HOSPITAL, costs, and trial by jury for all other issues
so triable by right.


### COUNT VI

### 42 U.S.C. §1983 AND §1985 CLAIMS - DEFENDANTS HOLLANT, PROSPERE, REYNAULD, THOMPSON, SIMMONS, BENNETT, AMADIO, PRESAS, SEPE, HERNANDEZ, BETLEM, KRAFT AND CARMICHAEL

105.   The Plaintiffs reallege paragraphs 1 through 86.

106.   While Defendants HOLLANT, PROSPERE, REYNAULD,
THOMPSON, SIMMONS, BENNETT, AMADIO, PRESAS, SEPE, HERNANDEZ,
BETLEM, KRAFT, CARMICHAEL were acting under color of state and
federal law as employees of Defendants JACKSON MEMORIAL HOSPITAL
and IRA CLARK, they subjected Plaintiffs JANNERAL DENSON and
JORDAN L. TAYLOR, a viable fetus, to the deprivation of rights
and privileges secured to them under the Fourth, Fifth, Eighth
and Fourteenth Amendments to the United States Constitution.

107.  While Defendants HOLLANT, PROSPERE, REYNAULD, THOMPSON, SIMMONS, BENNETT, AMADIO, PRESAS, SEPE, HERNANDEZ, BETLEM, KRAFT, CARMICHAEL were acting under color of state and federal law as employees of Defendants JACKSON MEMORIAL HOSPITAL and IRA CLARK,  they subjected the Plaintiffs to the deprivation of rights and privileges secured by them by the Constitution of the United States, including the constitutional rights to not be deprived of their liberty and due process of law and the constitutional right to be free from the use of excessive force against their person and to be free from unlawful searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

108.  The injuries sustained by the Plaintiffs were reasonably foreseeable consequences of the Defendants HOLLANT, PROSPERE, REYNAULD, THOMPSON, SIMMONS, BENNETT, AMADIO, PRESAS, SEPE, HERNANDEZ, BETLEM, KRAFT, CARMICHAEL's deliberate indifference to their obligation to provide appropriate medical care to the Plaintiffs and their unlawful search and seizure of the Plaintiffs.

109.  Said Defendants improperly treated and medicated the Plaintiff JANNERAL DENSON, despite notice and knowledge that said Plaintiff was twenty-eight weeks pregnant with the Plaintiff JORDAN L. TAYLOR.

110.  Said Defendants acted against the will of the

26

Plaintiff JANNERAL DENSON, thereby constituting an assault and battery on her body and the body of Plaintiff JORDAN L. TAYLOR.

111.   Said Defendants' improper treatment and medication of the Plaintiffs was without just cause and endangered the continued life of the Plaintiffs.

112.   Said Defendants in concert with the conduct of Defendants FRIEDLAND, LAVENKA, FLYNN, and PRIORE violated the right of the Plaintiffs to be free from unreasonable detention, search and seizure under the Fourth Amendment, and to due process of law under the Fifth Amendment to the United States Constitution.

113. As a direct and proximate result of the violation of the Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR's constitutional rights and violation of 42 U.S.C. §1983 and §1985 by Defendants HOLLANT, PROSPERE, REYNAULD, THOMPSON, SIMMONS, BENNETT, AMADIO, PRESAS, SEPE, HERNANDEZ, BETLEM, KRAFT, CARMICHAEL, said Plaintiffs have suffered severe physical, mental and emotional injuries, loss of earning capacity and loss of enjoyment of life as heretofore alleged.

**WHEREFORE**, the Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR demand compensatory and punitive damages against Defendants HOLLANT, PROSPERE, REYNAULD, THOMPSON, SIMMONS, BENNETT, AMADIO, PRESAS, SEPE, HERNANDEZ, BETLEM, KRAFT, and

CARMICHAEL, attorneys fees and costs and trial by jury for all
issues so triable by right.

## COUNT VII

### 42 U.S.C. §1983 AND §1985 CLAIMS - DEFENDANT JACKSON MEMORIAL HOSPITAL AND IRA CLARK

114.  The Plaintiffs reallege paragraphs 1 through 86, and
105 through 113.

115.  At all times material hereto, Defendants JACKSON
MEMORIAL HOSPITAL and IRA CLARK were responsible for adopting and
implementing the rules and regulations in regard to hiring,
screening, training, supervising, controlling, disciplining and
assigning nurses and doctors to their duties prescribed by the
contract they entered into with United States Customs Services on
behalf of the Defendant UNITED STATES OF AMERICA for the purpose
of providing medical care to persons suspected of smuggling
contraband inside their body cavities.

116.  The Defendants JACKSON MEMORIAL HOSPITAL and IRA CLARK
acted with deliberate indifference of both constitutional
prohibitions and guarantees under color of state and federal law,
thereby misusing the power possessed by virtue of state and
federal law and made possible only because said Defendants were
clothed with the authority of state and federal law.

117.  The Defendants JACKSON MEMORIAL HOSPITAL and IRA
CLARK's wrongful conduct was the direct, foreseeable and

proximate result of policies, practices and customs of said
Defendants cooperating with CUSTOMS in placing persons in danger,
subjecting them to excessive force and to illegal search and
seizure, denying them equal protection under the law, denying
them due process, violating their privacy, interfering with their
right to seek redress for their injuries by covering up
misconduct and by exhibiting deliberate indifference to their
serious medical needs.

118.   Defendants JACKSON MEMORIAL HOSPITAL and IRA CLARK
were aware that CUSTOMS employees and other persons, including
Defendants HOLLANT, PROSPERE, REYNAULD, THOMPSON, SIMMONS,
BENNETT, AMADIO, PRESAS, SEPE, HERNANDEZ, BETLEM, KRAFT,
CARMICHAEL and other medical personnel, had a custom, pattern or
practice of ongoing constitutional violations and practices and
were engaging in actions that deprived persons, such as
Plaintiffs, of their constitutional rights.

119.   The Plaintiffs have been victims of the above
mentioned illegal and improper treatment of United States Customs
detainees and said illegal treatment was the direct result of the
previously described acts, omissions, policies or customs of said
Defendants.

120.   The deliberate indifference of these Defendants
violated the constitutional rights of all persons, including the
Plaintiffs, for which 42 U.S.C. §1983 and §1985 provide a remedy.

121.   The Plaintiffs injuries were caused by the previously described conduct of Defendants JACKSON MEMORIAL HOSPITAL and IRA CLARK.

122.   As a direct and proximate cause of the acts described above, in violation of 42 U.S.C. § 1983 and §1985, the Plaintiffs have suffered severe physical, mental and emotional injuries, loss of earning capacity and loss of enjoyment of life, as heretofore alleged.

**WHEREFORE**, the Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR demand compensatory damages against Defendants JACKSON MEMORIAL HOSPITAL and IRA CLARK, and punitive damages against Defendant IRA CLARK, attorneys fees, costs and trial by jury for all issues so triable by right.

<u>COUNT VIII.</u>

<u>CLAIM AGAINST DEFENDANTS FRIEDLAND, LAVENKA,
FLYNN AND PRIORE
ASSAULT AND BATTERY</u>

123. The Plaintiffs reallege paragraphs 1 through 86.

124.   As a direct result of the above-described wrongful acts of Defendants FRIEDLAND, LAVENKA, and FLYNN and the injuries caused thereby, as alleged above, the Plaintiffs suffered severe physical injuries which necessitated them having to be admitted to a hospital in Palm Beach County, Florida.

125.   In committing the assault and battery on the Plaintiffs, the Defendants FRIEDLAND, LAVENKA, and FLYNN acted brutally, willfully, maliciously and without any excuse or justification.   The Defendants callously and recklessly by their actions disregarded the Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR's safety and continued life.

126.   The assault and battery on the Plaintiffs was due to insufficient training and supervision of Defendant PRIORE and the intentional, willful and malicious conduct of said Defendant.

**WHEREFORE,** the Plaintiffs demand compensatory and punitive damages against Defendants FRIEDLAND, LAVENKA, FLYNN and PRIORE, attorney fees, costs and trial by jury for all issues so triable by right.

<u>COUNT IX</u>

<u>CONSTITUTIONAL VIOLATIONS CLAIM - DEFENDANTS
FRIEDLAND, LAVENKA, AND FLYNN</u>

127.   The Plaintiffs reallege paragraphs 1 through 86 and 123 through 126.

128.   While Defendants CHERYL FRIEDLAND, LEE LAVENKA and DENNIS FLYNN were acting under color of state and federal law as Inspectors for United States Customs Service, they subjected Plaintiffs to the deprivation of rights and privileges secured to them under the Fourth and Fifth Amendments to the United States Constitution.

31

129.  The actions and conduct of Defendants LAVENKA, FLYNN and FRIEDLAND violated the right of the Plaintiffs to be free from unreasonable detention, search and seizure under the Fourth Amendment, and to due process of law under the Fifth Amendment to the United States Constitution.

130.  In doing the acts alleged above, Defendants, and each of them, acted together for the purpose of depriving the Plaintiffs of equal protection under the law, due process of law, the right to privacy, the right to be free from excessive force and unlawful search and seizure, freedom of association, and the right to seek redress for their injuries by covering up the misconduct.

131.  Defendants FRIEDLAND, LAVENKA, and FLYNN agreed to detain the Plaintiff JANNERAL DENSON at Jackson Memorial Hospital and subjected her to an intestinal purgative, monitoring, and other treatments and procedures against her will, without her consent, in violation of her constitutional rights.

132.  Said deprivation of rights occurred pursuant to said Defendants' attitudes, policies, procedures and practices, based on the gender and/or race of the Plaintiff JANNERAL DENSON and persons similarly situated.

133.  Defendants FRIEDLAND, LAVENKA, and FLYNN, and each of them, were dependent on and/or assisted each other in the execution of said plan, and thus each Defendant played a

substantial role in depriving Plaintiffs of their constitutional rights.

134.  As a direct and proximate result of the violation of the Plaintiffs constitutional rights, said Plaintiffs have suffered severe physical, mental and emotional injuries, loss of earning capacity and loss of enjoyment of life as heretofore alleged.

**WHEREFORE**, the Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR, a minor, demand compensatory and punitive damages against Defendants FRIEDLAND, LAVENKA and FLYNN, attorney fees, costs and trial by jury for all issues so triable by right.

### COUNT X

### CONSTITUTIONAL VIOLATIONS CLAIM - DEFENDANT PRIORE

135.  The Plaintiffs reallege paragraphs 1 through 86 and 123 through 134.

136.  At all times material hereto, Defendant PRIORE was responsible for adopting and implementing the rules and regulations in regard to training, supervising, controlling, disciplining and assigning Customs Inspectors to their duties with United States Customs Service on behalf of the Defendant UNITED STATES OF AMERICA.

137.  While Defendant PRIORE was acting under color of state

33

and federal law as the Port Director for United States Customs Service, he subjected Plaintiffs to the deprivation of rights and privileges secured to them under the Fourth and Fifth Amendments to the United States Constitution.

138.   Defendant PRIORE acted with deliberate indifference of both constitutional prohibitions and guarantees under color of state and federal law, thereby misusing the power possessed by virtue of state and federal law and made possible only because said Defendant was clothed with the authority of state and federal law.

139.   The actions and conduct of Defendant PRIORE violated the right of the Plaintiffs to be free from unreasonable detention, search and seizure under the Fourth Amendment, and to due process of law under the Fifth Amendment to the United States Constitution.

140.   The actions and conduct of Defendant PRIORE deprived the Plaintiffs of equal protection under the law, due process of law, the right to privacy, the right to be free from excessive force and unlawful search and seizure, freedom of association, and the right to seek redress for their injuries by covering up the misconduct.

141.   Defendant PRIORE's failure to train, supervise and/or discipline Defendants FRIEDLAND, LAVENKA, and FLYNN and other Customs Inspectors allowed the detention of the Plaintiff

JANNERAL DENSON to occur in violation of the constitutional rights of the Plaintiffs.

142.   Said deprivation of rights occurred pursuant to said Defendant's attitudes, policies, procedures and practices based on the gender and/or race of the Plaintiff JANNERAL DENSON and persons similarly situated.

143.   As a direct and proximate result of the violation of the Plaintiffs constitutional rights, said Plaintiffs have suffered severe physical, mental and emotional injuries, loss of earning capacity and loss of enjoyment of life as heretofore alleged.

**WHEREFORE**, the Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR, a minor, demand compensatory and punitive damages against Defendant PRIORE, attorney fees, costs and trial by jury for all issues so triable by right.

## COUNT XI

### CLAIM UNDER THE FEDERAL TORTS CLAIMS ACT

144.   The Plaintiffs reallege paragraphs 1 through 86, and 123 through 143.

145.   The warrantless detention, searches, handcuffing, assault, battery, and forced medication and improper treatment of the Plaintiffs by Defendants FRIEDLAND, LAVENKA, FLYNN and PRIORE

35

were undertaken without legal basis and these actions were in violation of the laws of the State of Florida, and in violation of the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

146.   Under the Federal Tort Claims Act, the Defendant UNITED STATES OF AMERICA is liable for the above described actions of Defendants FRIEDLAND, LAVENKA, FLYNN and PRIORE, agents for United States Customs Service, as they were acting within the scope of their employment.

147.   The Plaintiffs were victims of the abovementioned illegal treatment.

148.   As a direct and proximate cause of the acts described above, in violation of the United States Constitution, the Plaintiffs have suffered severe physical, mental and emotional injuries, loss of earning capacity and loss of enjoyment of life as heretofore alleged.

**WHEREFORE**, Plaintiffs JANNERAL DENSON and JORDAN L. TAYLOR, a minor, demand compensatory damages against said Defendant, attorney fees, costs and trial by jury for all other issues so triable by right.

**WE HEREBY CERTIFY** that a copy of the foregoing has been sent by U.S. Mail to Arnold T. Aikens, Esq., Assistant U.S. Attorney,

99 NE 4th Street, Third Floor, Miami, FL 33132-2111 and Maria

Arista-Volsky, Esq., Assistant County Attorney, 111 N.W. First

Street, Suite 2810, Miami, FL 33128-1993 this _____ day of

February, 2000.

                        HEYER & ASSOCIATES, P.A.
                        Attorneys for Plaintiff
                        1311 S.E. 4th Avenue
                        Fort Lauderdale, FL 33316
                        (954) 522-4922/(561) 833-1068
                        FAX NO.  (954) 522-4955

                        BY: _____
                            BARBARA A. HEYER
                            BAR NO. 346691

# Heyer & Associates, P.A.
## Attorneys at Law

Barbara A. Heyer (FL)

1311 S.E. 4th Avenue
Fort Lauderdale, Florida 3331

Broward: (954) 522-492.
Palm Beach: (561) 833-1066
Fax: (954) 522-4955

November 3, 1998

CERTIFIED NO: **P 157 886 107**

Department of Business & Professional
Regulations
1940 N. Monroe Street
Tallahassee, FL 32399-0750

To the Department of Professional Regulations:

Pursuant to Florida Statutes, the attached letter is being sent to your office to provide notice of our intent to file a lawsuit on behalf of Janneral Denson. (See attached copy of letters dated January 14, 1998 and November 2, 1998 of Jackson Memorial Hospital).

Very truly yours,

Barbara A. Heyer

Barbara A. Heyer

P 157 886 107



**US Postal Service**
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

Sent to: Dept. Business & Prof Reg.
Street & Number: 1940 N. Monroe St.
Post Office, State, & ZIP Code: Tallahassee, FL 32399-0752

| | |
|---|---|
| Postage | $ .55 |
| Certified Fee | 2.20 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ 2.75 |
| Postmark or Date | 11-3-98 |

PLAINTIFFS' EXHIBIT A

# Heyer & Associates, P.A.

### Attorneys at Law

Barbara A. Heyer (FL)

1311 S.E. 4th Avenue
Fort Lauderdale, Florida 33316

Broward: (954) 522-492□
Palm Beach: (561) 833-106☺
Fax: (954) 522-4955

November 9, 1998

**CERTIFIED NO: P 157 886 108**

Agency for Healthcare
2727 Mahan Drive
Tallahassee, FL 32308

To the Agency for Healthcare:

Pursuant to Florida Statutes, the attached letter is being
sent to your office to provide notice of our intent to file a
lawsuit on behalf of Janneral Denson.  (See attached copy of
letters to Jackson Memorial Hospital dated January 14, 1998 and
November 2, 1998).

Very truly yours,

Barbara A. Heyer

P 157 886 108

**US Postal Service**
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

Sent to
Agency For Healthcare

Street & Number
2727 Mahan Drive

Post Office, State, & ZIP Code
Tallahassee, FL 32308

| | |
|---|---|
| Postage | $ .55 |
| Certified Fee | 2.20 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ 2.75 |
| Postmark or Date | 11/9/98 |

Form 3800, April 1995

Agency For Healthcare
2727 mahan Drive
Tallahassee

Article Number
P 157 886 108

Type of Service:
☐ Registered   ☐ Insured
☒ Certified    ☐ COD
☐ Express Mail ☐ Return Receipt for Merchandise

Always obtain signature of addressee
or agent and DATE DELIVERED.

5. Signature — Addressee
X

8. Addressee's Address (ONLY if
requested and fee paid)

Robert Carpenter

# Heyer & Associates, P.A.

### Attorneys at Law

Barbara A. Heyer (FL)

1311 S.E. 4th A.
Fort Lauderdale, Florida 3

Broward: (954) 522
Palm Beach: (561) 833-
Fax: (954) 522-

January 14, 1999

CERTIFIED MAIL NO: P 157 886 205

Abigail Price Williams, Esq.
Jackson Memorial Hospital
1611 N.W. 12th Avenue, West Wing - #109
Miami, FL 33136

Re: Janneral Denson and Jordan L. Taylor

Dear Ms. Williams:

Please be informed that our firm represents the interests of Janneral Denson and Jordan L. Taylor with regard to the injuries they received as a result of treatment Ms. Denson received from your staff on February 14-16, 1997.

Thus, notice is hereby given of our intent to bring a lawsuit on behalf of Ms. Denson and Denson for the illegal, unlawful and inappropriate treatment of Ms. Denson on February 14-16, 1997. I am hereby requesting that the following documents be made available to me for inspection and copying:

1. Any and all documents, laboratory tests, reports, interviews, etc. regarding Ms. Denson's stay at Jackson Memorial Hospital.

2. A copy of the contract between Jackson Memorial Hospital and United States Customs regarding the treatment of any persons brought to the hospital by customs officers.

3. A list of all the employees of Jackson Memorial Hospital who came in contact with or treated Janneral Denson on February 14-16, 1997.

4. Any documentation which reflects the responsibilities and duties of Jackson Memorial Hospital with regard to persons

# Heyer & Associates, P.A.

Denson, CMH c.2

Please provide these documents to me within 45 days.
Thank you for your anticipated cooperation.

Very truly yours,

Barbara A. Heyer

BAH/jp
cc: Janneral Denson

● **SENDER**: Complete items 1 and 2 when additional services are desired, and complete items 3 and 4.
Put your address in the "RETURN TO" Space on the reverse side. Failure to do this will prevent this card from being returned to you. The return receipt fee will provide you the name of the person delivered to and the date of delivery. For additional fees the following services are available. Consult postmaster for fees and check box(es) for additional service(s) requested.
1. ☐ Show to whom delivered, date, and addressee's address.   2. ☐ Restricted Delivery
   *(Extra charge)*                                                *(Extra charge)*

| 3. Article Addressed to: | 4. Article Number |
| ABiGAiL  Price  WilliAMS, ESQ | P  157  886  206 |
| JAckson  MemoriAl  HospitAl | Type of Service: |
| 1611 N.W 12ᵗʰ Ave, West Wing | ☐ Registered  ☐ Insured |
| # 109 | ☒ Certified  ☐ COD |
| MiAmi, FL  33136 | ☐ Express Mail  ☐ Return Receipt for Merchandise |
| 5. Signature – Addressee | Always obtain signature of addressee or agent and DATE DELIVERED. |
| X | 8. Addressee's Address (ONLY if requested and fee paid) |
| 6. Signature – Agent | |
| X | |
| 7. Date of Delivery | |

PS Form **3811**, Apr. 1989   ⋆U.S.G.P.O. 1989-238-815   **DOMESTIC RETURN RECEIPT**

---

P  157  886  206

**US Postal Service**
## Receipt for Certified Mail
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

| Sent to | AbiGAil  Price  WilliAms,SA. |
| Street & Number | 1611 N.W 12ᵗʰ Ave · 109 West |
| Post Office, State, & ZIP Code | MiAmi, FL  33136 |
| Postage | $  1.39 |
| Certified Fee | 2.20 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $  2.52 |
| Postmark or Date | 1/15/98 |

PS Form **3800**, April 1995

# Heyer & Associates, P.A.

### Attorneys at Law

Barbara A. Heyer (FL)

1311 S.E. 4th Ave
Fort Lauderdale, Florida 33

Broward: (954) 522—
Palm Beach: (561) 833—7
Fax: (954) 522—4

November 2, 2993

Ms. Carmen M. Flores
Claims Investigator
Risk Management
Jackson Memorial Hospital
1611 N.W. 12th Avenue, West Wing - #109
Miami, Florida 33136

Re: <u>Janneral Denson and Jordan L. Taylor</u>
Your File No: 3833-CMF

Dear Ms. Flores:

With regard to your letter of October 14, 1998, enclosed
please find the affidavit of Dr. Steven Pliskow. This, along
with the other documents provided by us, should enable you to
complete your presuit investigation within the prescribed ninety
(90) day time period.

In your letter, you state that I have made "serious
allegations that require a responsible, well-founded reply."
Frankly, the "serious allegations" are based upon your own
records. I have practiced in the area of civil rights litigation
for over fifteen years and thought I had seen the worst types of
abuses by governmental entities, then Ms. Denson walked into my
office.

The fact that your hospital and staff were a party to and
actively participated in the injuries to Ms. Denson and her son
does not bode well for persons, particularly minorities, seeking
medical treatment at Jackson Memorial Hospital. I do not believe
that the <u>Nuremberg</u> defense will be a winning argument in this
case.

I am also enclosing a courtesy copy of the Complaint that we
will be filing in Federal Court on November 11, 1998. If you
wish to resolve this matter prior to that date, I look forward to

# Heyer & Associates, P.A.

<u>Denson, JMH/p.2</u>

hearing from you.  Otherwise, as the saying goes, "see you in
court."

Very truly yours,

Barbara A. Heyer

BAH/aa
encl.
cc:  Janneral Denson



# AFFIDAVIT

I, Steven Pliskow, am duly and regularly engaged in the practice of Obstetrics and Gynecology. I hold a medical degree, with honors, from Albany Medical College of Union University. I received my professional training at the University of Miami/Jackson Memorial Hospital where I served as chief resident from 1989-1990. I am licensed to practice medicine in the State of Florida, a Diplomat of the American Board of Obstetrics and Gynecology and a Fellow of the American College of Obstetrics and Gynecology. I have published several articles in obstetrical and gynecologic peer review journals . I currently serve as Chairman of the Quality Assurance Committee for the Department of Obstetrics and Gynecology at Palms West Hospital in West Palm Beach. I am also a clinical instructor for the OB/GYN residency program at Lake Erie College of Osteopathic Medicine. I am actively practicing my profession in the State of Florida. I am familiar with the professional standards of care required and applicable to the facts and circumstances of this case.

It is my professional opinion that the physicians at Jackson Memorial Hospital who treated Janneral Denson during her admission to the hospital on 2-14-97, failed to meet the reasonably required and professional standards of obstetrical and gynecological care.

The physicians verbally threatened and subsequently forced Mrs. Denson to accept medical care without obtaining her informed consent. At the time of admission, Mrs. Denson was 28 weeks pregnant. She was admitted to the hospital for treatment of suspected ingestion of controlled substances. She had previously been treated for a urinary tract infection and third trimester bleeding, on 2-4-97, both of which made her at high risk for premature delivery. An ultrasound performed on admission showed a marginal placenta previa. This ultrasound also failed to document the presence of any contraband in her stomach. Ignoring these facts, the physicians proceeded to give Mrs. Denson, Golytly, a bowel cleanser, which is contraindicated in a high risk pregnancy. The physicians also placed her on a restrictive diabetic diet even though she was not a gestational diabetic. Mrs. Denson suffered from increasing vaginal bleeding, and subsequently delivered a 30 week premature infant, due to premature rupture of the membranes and abruption of the marginal placenta previa.

It is my professional opinion that this breach of the standard of care significantly increased the probability of a premature delivery of Janerral Denson.

No previous medical opinions rendered by me have ever been disqualified by any court of law.

Signed this ___30th___ day of October, 1998.

_Steven J. Pliskow_ M.D., F.A. C.O.G.
STEVEN PLISKOW, MD. FA.C.O.G.

Before me appeared Steven Pliskow who is personally known to me. Signed this __30th__ day of October, 1998.

_Carol Ann Thomas_
CAROL ANN THOMAS
Notary Public

My Commission Expires: 1-30-99

CAROL ANN THOMAS
COMMISSION # CC 431789
EXPIRES J. 30,1999
BC-C . .RU
ATLANTIC B..., ...G CO., INC.

# Heyer & Associates, P.A.

### Attorneys at Law

Barbara A. Heyer (FL)

1311 S.E. 4th Avenue
Fort Lauderdale, Florida 33316

Broward: (954) 522-492
Palm Beach: (561) 833-1068
Fax: (954) 522-4958

November 3, 1998

**CERTIFIED NO: P 157 886 106**

The Insurance Commissioner
The Capitol
PL 11
Tallahassee, FL 32301

To the Department Of Insurance:

    Pursuant to Florida Statutes, the attached letter is being sent to your office to provide notice of our intent to file a lawsuit on behalf of Janneral Denson. (See attached copy of letters to Abigail Price Williams, dated January 14, 1998 and November 2, 1998 of Jackson Memorial Hospital).

Very truly yours,

*Barbara A. Heyer*

Barbara A. Heyer

---

P 157 886 106

| US Postal Service **Receipt for Certified Mail** No Insurance Coverage Provided. Do not use for International Mail (See reverse) | |
|---|---|
| Sent to Insurance Commissioner | |
| Street & Number The Capitol – PL 11 | |
| Post Office, State, & ZIP Code Tallahassee, FL 32301 | |
| Postage | $ .55 |
| Certified Fee | 2.20 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ 2.75 |
| Postmark or Date | |

**SENDER:** Complete items 1 and 2 when additional services are desired, and complete items 3 and 4.

Put your address in the "RETURN TO" Space on the reverse side. Failure to do this will prevent this card from being returned to you. The return receipt fee will provide you the name of the person delivered to and the date of delivery. For additional fees the following services are available. Consult postmaster for fees and check box(es) for additional service(s) requested.
1. ☐ Show to whom delivered, date, and addressee's address. 2. ☐ Restricted Delivery (Extra charge) (Extra charge)

| 3. Article Addressed to: | 4. Article Number |
|---|---|
| Insurance Commissioner The Capitol PL 11 Tallahassee, FL 32301 | P 157 886 106 |
| | Type of Service: ☐ Registered ☐ Insured ☒ Certified ☐ COD ☐ Express Mail ☐ Return Receipt for Merchandise |
| | Always obtain signature of addressee or agent and DATE DELIVERED. |
| 5. Signature – Addressee X | 8. Addressee's Address (ONLY if requested and fee paid) |
| 6. Signature – Agent X | NOV 05 1998 |

PLAINTIFF'S EXHIBIT

# Heyer & Associates, P.A.

### Attorneys at Law

Barbara A. Heyer (FL)

1311 S.E. 4th
Fort Lauderdale, Florida

Broward: (954) 52
Palm Beach: (561) 83
Fax: (954) 52

January 14, 1999

CERTIFIED MAIL NO: P 157 886 235

Abigail Price Williams, Esq.
Jackson Memorial Hospital
1611 N.W. 12th Avenue, West Wing - #109
Miami, FL 33136

Re: <u>Janneral Denson and Jordan L. Taylor</u>

Dear Ms. Williams:

Please be informed that our firm represents the interests of Janneral Denson and Jordan L. Taylor with regard to the injuries they received as a result of treatment Ms. Denson received from your staff on February 14-16, 1997.

Thus, notice is hereby given of our intent to bring a lawsuit on behalf of Ms. Denson and Denson for the illegal, unlawful and inappropriate treatment of Ms. Denson on February 14-16, 1997. I am hereby requesting that the following documents be made available to me for inspection and copying:

1. Any and all documents, laboratory tests, reports, interviews, etc. regarding Ms. Denson's stay at Jackson Memorial Hospital.

2. A copy of the contract between Jackson Memorial Hospital and United States Customs regarding the treatment of any persons brought to the hospital by customs officers.

3. A list of all the employees of Jackson Memorial Hospital who came in contact with or treated Janneral Denson on February 14-16, 1997.

# Heyer & Associates, P.A.

Denson: CMH c.2

Please provide these documents to me within 45 days.
Thank you for your anticipated cooperation.

Very truly yours,

Barbara A. Heyer

BAH/jp
cc: Janneral Denson

● **SENDER**: Complete items 1 and 2 when additional services are desired, and complete items 3 and 4.
Put your address in the "RETURN TO" Space on the reverse side. Failure to do this will prevent this card from being returned to you. The return receipt fee will provide you the name of the person delivered to and the date of delivery. For additional fees the following services are available. Consult postmaster for fees and check box(es) for additional service(s) requested.
1. ☐ Show to whom delivered, date, and addressee's address.   2. ☐ Restricted Delivery
(Extra charge)                                    (Extra charge)

| 3. Article Addressed to: | 4. Article Number |
|---|---|
| ABIGAIL PRICE WILLIAMS, ESQ<br>JACKSON MEMORIAL HOSPITAL<br>1611 N. W 12ᵗʰ Ave, WEST WING<br># 109<br>MIAMI, FL 33136 | P 157 886 206 |

**Type of Service:**
☐ Registered   ☐ Insured
☒ Certified   ☐ COD
☐ Express Mail   ☐ Return Receipt for Merchandise

Always obtain signature of addressee or agent and **DATE DELIVERED**.

5. Signature — Addressee
X

6. Signature — Agent
X

8. Addressee's Address (ONLY if requested and fee paid)

7. Date of Delivery

PS Form 3811, Apr. 1989            ☆U.S.G.P.O. 1989-238-815            DOMESTIC RETURN RECEIPT

---

P 157 886 206

**US Postal Service**
## Receipt for Certified Mail
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

| | |
|---|---|
| Sent to<br>Abigail Price Williams, Esq. | |
| Street & Number<br>1611 N. W 12ᵗʰ Ave · 109 West | |
| Post Office, State, & Zip Code<br>Miami, FL 33136 | |
| Postage | $ 1.32 |
| Certified Fee | 2.20 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ 2.52 |
| Postmark or Date<br>1/15/90 | |

Form 3800, April 1995

# Heyer & Associates, P.A.

### Attorneys at Law

Barbara A. Heyer (FL)

1311 S.E. 4th A
Fort Lauderdale, Florida 3

Broward: (954) 522
Palm Beach: (561) 833
Fax: (954) 522

November 2, 2993

Ms. Carmen M. Flores
Claims Investigator
Risk Management
Jackson Memorial Hospital
1611 N.W. 12th Avenue, West Wing - #109
Miami, Florida 33136

Re: <u>Janneral Denson and Jordan L. Taylor</u>
Your File No: 3833-CMF

Dear Ms. Flores:

With regard to your letter of October 14, 1998, enclosed
please find the affidavit of Dr. Steven Pliskow. This, along
with the other documents provided by us, should enable you to
complete your presuit investigation within the prescribed ninety
(90) day time period.

In your letter, you state that I have made "serious
allegations that require a responsible, well-founded reply."
Frankly, the "serious allegations" are based upon your own
records. I have practiced in the area of civil rights litigation
for over fifteen years and thought I had seen the worst types of
abuses by governmental entities, then Ms. Denson walked into my
office.

The fact that your hospital and staff were a party to and
actively participated in the injuries to Ms. Denson and her son
does not bode well for persons, particularly minorities, seeking
medical treatment at Jackson Memorial Hospital. I do not believe
that the <u>Nuremberg</u> defense will be a winning argument in this
case.

I am also enclosing a courtesy copy of the Complaint that we
will be filing in Federal Court on November 11, 1998. If you

# Heyer & Associates, P.A.

Denson, JMH/p.2

hearing from you.  Otherwise, as the saying goes, "see you in court."

Very truly yours,

Barbara A. Heyer

BAH/aa
encl.
cc:  Janneral Denson



# AFFIDAVIT

I, Steven Pliskow, am duly and regularly engaged in the practice of Obstetrics and Gynecology. I hold a medical degree, with honors, from Albany Medical College of Union University. I received my professional training at the University of Miami/Jackson Memorial Hospital where I served as chief resident from 1989-1990. I am licensed to practice medicine in the State of Florida, a Diplomat of the American Board of Obstetrics and Gynecology and a Fellow of the American College of Obstetrics and Gynecology. I have published several articles in obstetrical and gynecologic peer review journals . I currently serve as Chairman of the Quality Assurance Committee for the Department of Obstetrics and Gynecology at Palms West Hospital in West Palm Beach. I am also a clinical instructor for the OB/GYN residency program at Lake Erie College of Osteopathic Medicine. I am actively practicing my profession in the State of Florida. I am familiar with the professional standards of care required and applicable to the facts and circumstances of this case.

It is my professional opinion that the physicians at Jackson Memorial Hospital who treated Janneral Denson during her admission to the hospital on 2-14-97, failed to meet the reasonably required and professional standards of obstetrical and gynecological care.

The physicians verbally threatened and subsequently forced Mrs. Denson to accept medical care without obtaining her informed consent. At the time of admission, Mrs. Denson was 28 weeks pregnant. She was admitted to the hospital for treatment of suspected ingestion of controlled substances. She had previously been treated for a urinary tract infection and third trimester bleeding, on 2-4-97, both of which made her at high risk for premature delivery. An ultrasound performed on admission showed a marginal placenta previa. This ultrasound also failed to document the presence of any contraband in her stomach. Ignoring these facts, the physicians proceeded to give Mrs. Denson, Golytly, a bowel cleanser, which is contraindicated in a high risk pregnancy. The physicians also placed her on a restrictive diabetic diet even though she was not a gestational diabetic. Mrs. Denson suffered from increasing vaginal bleeding, and subsequently delivered a 30 week premature infant, due to premature rupture of the membranes and abruption of the marginal placenta previa.

It is my professional opinion that this breach of the standard of care significantly increased the probability of a premature delivery of Janerral Denson.

No previous medical opinions rendered by me have ever been disqualified by any court of law.

Signed this ___30th___ day of October, 1998.

_Steven J. Pliskow_ M.D, F.A. C.O.G.
STEVEN PLISKOW, MD. FA.C.O.G.

Before me appeared Steven Pliskow who is personally known to me. Signed this 30th day of October, 1998.

_Carol Ann Thomas_
CAROL ANN THOMAS
Notary Public

My Commission Expires: 1-30-99

CAROL ANN THOMAS
COMMISSION # CC 481788
EXPIRES JAN 30,1999
BONDED THRU
ATLANTIC BONDING CO., INC.

Agenda Item 10(b)(11)
Finance Committee
May 10, 1990

RESOLUTION NO. PET 05/90-1415

RESOLUTION APPROVING AMENDMENT
TO AGREEMENT WITH UNITED STATES
DEPARTMENT OF THE TREASURY,
CUSTOMS SERVICES.

WHEREAS, the Trust approved an agreement with the U. S. Department of the Treasury, Customs Services, for examination and treatment of patients suspected of smuggling contraband inside body cavities; and

WHEREAS, said Department has offered an amendment to said agreement, increasing funding from $65,000 to $130,000; and

WHEREAS, the President and the Finance Committee recommend approval:

NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF TRUSTEES OF THE PUBLIC HEALTH TRUST OF DADE COUNTY, FLORIDA, That this Board hereby approves the amendment to the agreement with the U. S. Department of the Treasury, Customs Services, a copy of which is attached hereto and incorporated herein by reference, and authorizes and directs the President to execute same for and on behalf of the Public Health Trust.



PLAINTIFF'S
EXHIBIT
C

PLAINTIFFS' EXHIBIT C
Page 1 of 3

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

BLANKET PURCHASE ARRANGEMENT

The JACKSON MEMORIAL HOSPITAL company agrees to furnish the following supplies and/or services MEDICAL SERVICES is requested by the contracting officer or his authorized representative during the period From: 10-01-95 Through: 09-30-9 unless extended by mutual agreement of the parties hereto.

The Government is obligated only to the extent of authorized calls actually placed against the blanket purchase arrangement.

The vendor warrants that the prices quoted at the time(s) the order(s) is placed are as low as or lower than the prices quoted to, or paid by, any purchaser for like quantities of the items required to be delivered hereunder under like circumstances and shall be the price/s shown on billing.

No individual call under this arrangement shall exceed EXCEED $2500.00

The following listed individual(s) SEE BELOW shall be the only individual(s) authorized to place calls under this BPA, in the name of USCS . No others shall be accepted.

NAME: S. REARICK _____ TITLE: _____

NAME: C. MEADERS _____ TITLE: _____

NAME: _____ TITLE: _____

Since all orders under this arrangement are placed by telephone and at that time information as to availability of stock for delivery and price information is established, there shall be no partial deliveries. Partial deliveries are NOT desired; SHIP COMPLETE ONLY.

Delivery/Service Tickets - all shipments under the arrangement shall contain the following information:

    (a) Name of supplier
    (b) Blanket purchase arrangement number
    (c) Date of call
    (d) Call Number
    (e) Itemized list of supplies/services furnished; and
    (f) Quantity

Only one (1) copy of delivery/services ticket is required.

Your invoice itemizing the supplies or services furnished including unit price, extensions and total amount due, BPA order number and call numbers shall be submitted monthly covering all deliveries made during the billing period for which payment has not been received. Discounts for prompt payment will be in accordance with paragraph (3) of the attached terms and conditions, (SF 147).

Person(s) and/or department to be contacted when placing orders under this arrangement:

| NAME | TELEPHONE NO. and EXTENSION |
|---|---|
| | |

Discount for prompt payment: _____N/A_____

The issuance of individual requests against this blanket purchase arrangement will be made under the authority of Title 41, USC 252(c)(3).

Terms and conditions attached hereto are made a part hereof (include applicable clauses).

| ACCEPTED | BPA Number |
|---|---|
| | CS-I-96-23457-0 |
| Company Name JACKSON Memorial Hospital | Contracting Officer DAVID J. HANSEN |
| Signature & Title                     Date | Signature                     Date  10/23/95 |

Please acknowledge and return Copies 2 and 3 to the USCS contracting officer.

U.S. CUSTOMS SERVICE
ROOM 409
77 SE 5TH ST.
MIAMI, FL 33131

Agenda Item 10(A)(III)
Finance Committee
May 10, 1990

Page 2

The foregoing resolution was offered by   Mr. High   , who
moved its adoption. The action was seconded by Mr. Cancela   and,
upon being put to a vote, the vote was as follows:

|  |  |
|---|---|
| Bernyce Adler | Absent |
| J. Boyd Benjamin | Aye |
| Peggy Hollander | Aye |
| Jose C. Cancela | Absent |
| Irene Canal-Petersen | Aye |
| Hardee A. Ceballos | Aye |
| Tanya Lozano | Aye |
| Thelma V. A. Gibson | Absent |
| Arthur H. Hertz | Aye |
| Lester High | Aye |
| David L. Paul | Aye |
| Stanley G. Tate | Aye |
| Elayne Weisburd | Absent |
| Jay W. Weiss | Aye |
| Richard J. Weiss | |

this 10th day of May 1990.

PUBLIC HEALTH TRUST OF DADE COUNTY, FLORIDA

By: _____
        Irene Canal-Petersen, Secretary

Approved by the County
Attorney's Office

1.    I, the undersigned patient or _____ (name of authorized representative acting on behalf of patient) consent to undergo all necessary tests, medication, treatments, and other procedures in the course of the study, diagnosis, and treatment of my illness(es) by the medical staff and other agents or employees of the Public Health Trust (Jackson Memorial Hospital) and the University of Miami School of Medicine, including medical students. The identity of the physician who currently has primary responsibility for my care has been provided to me.

2.    I understand that, absent emergency or extraordinary circumstances, non-routine and major medical procedures will not be performed upon me until I have had an opportunity to discuss and agree to them with a physician. I further understand that this is a teaching hospital, and that training doctors is one of the activities of the hospital, and I agree to cooperate to the best of my ability.

3.    I agree to receive blood or blood products as deemed necessary by the physician treating me with the knowledge that the transfusion of blood and blood products carries a risk of infection including but not limited to HIV infection (AIDS), hepatitis, other infections and/or complications.

4.    I am aware that the practice of medicine and surgery is not an exact science and I acknowledge that no guarantees have been made to me as to the results of diagnoses, examinations or treatments in the hospital or clinics.

5.    I hereby authorize the staff of the Public Health Trust and/or the University of Miami School of Medicine to take such still photographs, motion pictures, television transmission, and/or videotaped recording for educational and evidentiary purposes as they may wish.

6.    I hereby authorize the Public Health Trust and the University of Miami School of Medicine to retain, preserve, and use for scientific research, therapeutic, commercial, or teaching purposes, or dispose of at their convenience, any specimens or tissues taken from my body during my hospitalization or treatment.

7.    I hereby grant access to medical records for bona fide research to members of the medical staff and other medical researchers and authorize my medical records and results to be used for research. I realize that my records will not be identified as pertaining to me specifically without my expressed permission.

8.    I consent to the release of medical information to other institutions, agencies, health care organization, or health care providers accepting the patient for medical or institutional care, and consent to the release of medical information to patient's insurer and/or managed care organization and their agents for purposes including but not limited to Utilization Review and Quality Assurance Review.

9.    I hereby grant access to my medical records to the senior management of the Public Health Trust for the specific purpose of evaluating the ongoing quality of care rendered by their staff. I further authorize the senior management to use portions of my medical records as necessary for purposes of educating or disciplining their staff, provided that the records will not be identified as pertaining to me specifically without my expressed permission.

10.   I hereby authorize payment directly to the Public Health Trust and/or University of Miami Diagnostic Clinic of benefits due to me in my pending claim and/or **MAJOR MEDICAL BENEFITS** otherwise payable to me, but not to exceed the Hospital and/or Physician's regular charges for this period of treatment. I agree that a photostatic copy of this authorization is as valid as the original.

I have read and clearly understand the above.

Refuse to Sign

_____  Date: 2/14/97  Time: 11 49  AM/PM
Signature of patient or patient's authorized representative

_____
Witness's Signature

_____
Witness's Signature

**MINORS CONSENT:** Unemancipated patients (minors under 18 yrs of age) must have parents or guardian's signature, except for emergency medical care, diagnosis or treatment of a sexually transmitted disease, or treatment of pregnancy.

_____
Parent or Guardian's Signature

**EMERGENCY CONSENT:** Patient is unattended by legal guardian, health care surrogate, or relative and/or is unable to sign consent for treatment necessary to correct or stabilize a serious medical condition(s) demanding immediate medical attention. I certify that this condition will endanger the life, limb, or health of the patient and authorize emergency procedures.



_____
Physician's Signature/Number

_____
Physician's Signature/Number

_____
Date          Time

**PLAINTIFF'S EXHIBIT**
D

PATIENT IMPRINT

25...32.5   007   11/24/72
DENSON, JAMERAL        3F
P.O. BOX   13123       33316
7745   AL4   N   02/23/97 AL4

**JACKSON MEMORIAL HOSPITAL**
MIAMI, FLORIDA 33136-1094

1. I, the undersigned patient or _____ (name of authorized representative acting on behalf of patient) consent to undergo all necessary tests, medication, treatments, and other procedures in the course of the study, diagnosis, and treatment of my illness(es) by the medical staff and other agents and/or employees of the Public Health Trust (Jackson Memorial Hospital) and the University of Miami School of Medicine, including medical students. The identity of the physician who currently has primary responsibility for my care has been provided to me.

2. I understand that, absent emergency or extraordinary circumstances, non-routine and major medical procedures will not be performed upon me until I have had an opportunity to discuss and agree to them with a physician. I further understand that this is a teaching hospital, and that training doctors is one of the activities of the hospital, and I agree to cooperate to the best of my ability.

3. I agree to receive blood or blood products as deemed necessary by the physician treating me with the knowledge that the transfusion of blood and blood products carries a risk of infection including but not limited to HIV infection (AIDS), hepatitis, other infections and/or complications.

4. I am aware that the practice of medicine and surgery is not an exact science and I acknowledge that no guarantees have been made to me as to the results of diagnoses, examinations or treatments in the hospital or clinics.

5. I hereby authorize the staff of the Public Health Trust and/or the University of Miami School of Medicine to take such still photographs, motion pictures, television transmission, and/or videotaped recording for educational and evidentiary purposes as they may wish.

6. I hereby authorize the Public Health Trust and the University of Miami School of Medicine to retain, preserve, and use for scientific research, therapeutic, commercial, or teaching purposes, or dispose of at their convenience, any specimens or tissues taken from my body during my hospitalization or treatment.

7. I hereby grant access to medical records for bona fide research to members of the medical staff and other medical researchers and authorize my medical records and results to be used for research. I realize that my records will not be identified as pertaining to me specifically without my expressed permission.

8. I consent to the release of medical information to other institutions, agencies, health care organization, or health care providers accepting the patient for medical or institutional care, and consent to the release of medical information to patient's insurer and/or managed care organization and their agents for purposes including but not limited to Utilization Review and Quality Assurance Review.

9. I hereby grant access to my medical records to the senior management of the Public Health Trust for the specific purpose of evaluating the ongoing quality of care rendered by their staff. I further authorize the senior management to use portions of my medical records as necessary for purposes of educating or disciplining their staff, provided that the records will not be identified as pertaining to me specifically without my expressed permission.

10. I hereby authorize payment directly to the Public Health Trust and/or University of Miami Diagnostic Clinic of benefits due to me in my pending claim and/or **MAJOR MEDICAL BENEFITS** otherwise payable to me, but not to exceed the Hospital and/or Physician's regular charges for this period of treatment. I agree that a photostatic copy of this authorization is as valid as the original.

I have read and clearly understand the above.

_____     Date: 2/15/97     Time: _____ AM/PM
Signature of patient or patient's authorized representative

_____
Witness's Signature                                    Witness's Signature

**MINORS CONSENT:** Unemancipated patients (minors under 18 yrs of age) must have parents or guardian's signature, except for emergency medical care, diagnosis or treatment of a sexually transmitted disease, or treatment of pregnancy.

_____
Parent or Guardian's Signature

**EMERGENCY CONSENT:** Patient is unattended by legal guardian, health care surrogate, or relative and/or is unable to sign consent for treatment necessary to correct or stabilize a serious medical condition(s) demanding immediate medical attention. I certify that this condition will endanger the life, limb, or health of the patient and authorize emergency procedures.

_____
Physician's Signature Number

_____
Physician's Signature Number

_____          _____
Date                        Time

**PLAINTIFF'S EXHIBIT**
E

PATIENT IMPRINT

**JACKSON MEMORIAL HOSPITAL**
MIAMI, FLORIDA 33136-1094

GENERAL CONSENT FOR TREATMENT